1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DELORES WALLS, | ) | 1:04cv6391 AWI DLB |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| Plaintiff, | ) | REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

17

## **BACKGROUND**

18    Plaintiff Delores Walls ("Plaintiff") seeks judicial review of a final decision of the

19 Commissioner of Social Security ("Commissioner") denying her application for disability

20 insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social

21 Security Act.  The matter is currently before the Court on the parties' briefs, which were

22 submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate

23 Judge, for findings and recommendation to the District Court.

24

## **FACTS AND PRIOR PROCEEDINGS[1]**

25    Plaintiff filed her application on November 6, 2001, alleging disability since October 9,

26 2001, due to "muscle spasm in back, sporadic memory loss, high blood pressure, diabetic, muscle

27 

28    [1] References to the Administrative Record will be designated as "AR," followed by the appropriate page
number.

1

1    cramps in leg that causes leg to give out without notice, fast heart beat, trouble breathing, high
2    stress, pressure in chest." AR 61-63, 73-82.  After being denied both initially and upon
3    reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR
4    44-47, 51-54, 55.  On October 2, 2003, ALJ Joanne Birge held a hearing.  AR 372-388.  ALJ
5    Birge denied benefits on November 17, 2003.  AR 13-21.  On August 6, 2004, the Appeals
6    Council denied review.  AR 4-6.

7    　　　　Hearing Testimony

8    　　　　ALJ Birge held a hearing on October 2, 2003, in Fresno, California.  Plaintiff appeared
9    with her attorney, Gina Fazio.  AR 372.

10    　　　　Plaintiff testified that she was 53 years old at the time of the hearing.  She was married
11    and lived with her husband and their two children.  AR 375.  She has a driver's license and
12    drives daily when she takes her children to school or goes to the store.  AR 375.  She completed
13    high school and had some college courses.  AR 376.  She was 5'5" tall and weighed 172 pounds.
14    AR 376.

15    　　　　Plaintiff last worked in September 2003 as a file clerk.  She was working 40 hours per
16    week and stopped because she was laid off.  She would have kept working had she not been laid
17    off.  AR 377.  The only problem she had performing that job was that her hand would "lock up"
18    because of her carpal tunnel syndrome.  AR 377.  Her employer was aware of it and if it became
19    severe, she was allowed to go home.  She had to go home about five times because of her hand
20    problem during her five months on the job.  AR 377.

21    　　　　Prior to this position, Plaintiff last worked in 2001.  She stopped working because she
22    was getting dizzy and having heart problems, which caused her to feel faint and sick.  AR 378.
23    These problems have not improved since then, but her position as a file clerk allowed her to set
24    her head down if it got too bad, or go home.  AR 378.

25    　　　　In addition to her carpal tunnel syndrome, Plaintiff has trouble breathing.  AR 380.  She is
26    on nitroglycerin and has problems related to menopause.  AR 380-381.  She has spasms in her
27    leg and back, which cause problems sleeping.  AR 381.  She used to walk daily but stopped when
28    she got a pain in her leg.  AR 381.

1    Her breathing problems are caused by asthma, and she either takes asthma medications or

2 nitroglycerin to help her breath.  AR 381-382.  Her medications cause headaches.  AR 382.

3    Plaintiff testified that her carpal tunnel syndrome is worse in her right hand, although she

4 thought her left hand was "catching up."  AR 382.  Her right hand hurts up to her upper arm and

5 her left hand hurts up to the elbow.  AR 383.  Release surgery has not been suggested.  AR 383.

6 She wears wrist braces on both wrists for at least 30 minutes to one hour a day.  AR 383-384.

7 The braces help, and she wore them while she did her file clerk work.  AR 384.

8    She also has problems with stress for which she sees a psychologist once a month.  AR

9 384.  She tends to get depressed and withdraw.  AR 384.

10    Plaintiff goes to church once or twice a week.  She enjoys cooking and watching her

11 children play sports.  AR 385.  She also reads for about an hour a day.  AR 385.  She is unable to

12 do yard work because she is allergic to dirt.  AR 385.  She cooks dinner about twice a week and

13 does the laundry.  AR 386.  She grocery shops with her daughter.  AR 386.  She cannot do the

14 heavy cleaning in the house because of her hand and back.  AR 386.

15 <u>Medical Evidence</u>

16    Plaintiff underwent gastric bypass surgery in September 1998.  AR 241-243.  She

17 subsequently lost weight and achieved control of her diabetes without insulin.  AR 238, 240.

18    Plaintiff was seen in the emergency room at St. Agnes Medical Center on June 20, 2001,

19 for complaints of chest pain.  AR 207.  A chest x-ray was negative for evidence of acute

20 cardiopulmonary disease.  AR 213.  She was diagnosed with musculoskeletal chest pain.  AR

21 208.  Plaintiff was given Motrin and her pain went away.  AR 209.

22    Plaintiff saw her treating physician, Pam K. Janda, M.D., on June 26, 2001.  Plaintiff had

23 not had any recurrence of chest pain, but was under a lot of stress.  She was diagnosed with

24 hypertension, better controlled though not yet optimally controlled, and costochondritis.  Plaintiff

25 was advised regarding diet, exercise and stress reduction.  AR 305.

26    Plaintiff was seen in the emergency room on August 3, 2001, for complaints of chest

27 pain, trouble breathing and dizziness.  An x-ray did not reveal any acute cardiopulmonary

28

3

disease. AR 148. She was diagnosed with chest pain, poor control of her non-insulin dependent diabetes, a urinary tract infection, high blood pressure and anemia. AR 145.

_____On August 27, 2001, Plaintiff was seen by Lakhjit S. Sandu, M.D., for evaluation of chest pressure. An echocardiography with Doppler study was normal. An exercise treadmill test suggested ischemia. Dr. Sandu diagnosed atypical chest pain, rule out coronary artery disease, and hypertension. He advised Plaintiff to continue her medications and return in one month. AR 151-152.

On February 15, 2002, State Agency physician Brian Ginsburg, M.D., completed a Physical Residual Functional Assessment Form and opined that Plaintiff could occasionally lift and carry 20 pounds, 10 pounds frequently, could stand and/or walk about six hours in an eight hour day, and could sit about six hours in an eight hour day. Plaintiff was not limited in pushing or pulling, but could only occasionally climb ramps or stairs and could never climb ladders, ropes or scaffolds. Plaintiff could occasionally balance and had to avoid concentrated exposure to hazards because of her history of dizziness and blurry vision. AR 166-172. This assessment was affirmed by State Agency physician Ernest Wong, M.D., on December 12, 2002. AR 172.

_____Also on February 15, 2002, Dr. Ginsburg opined that Plaintiff did not have a mental impairment. AR 175. This opinion was affirmed on December 16, 2002. AR 175.

Plaintiff saw Dr. Sandu on February 20, 2002, and complained of occasional chest pain. AR 368. He diagnosed her with recurrent chest pain, atypical, diabetes and hypertension. AR 368.

On March 19, 2002, Plaintiff underwent a cardiac catheterization to determine whether she had coronary artery disease. AR 204. Dr. Sanhu concluded that her heart functioning was generally normal and recommended that she continue her medical management. AR 205. Plaintiff also underwent a selective coronary angiography, which was normal. AR 370.

Plaintiff saw Kelvin Higa, M.D., on April 15, 2002. AR 220. In a letter to Dr. Janda, Dr. Higa summarized Plaintiff's progress since her 1998 gastric bypass surgery and noted her complaints of a recurrent hernia. AR 220.

1    A chest x-ray on May 1, 2002, showed no evidence of acute cardiopulmonary disease.

2 AR 184.

3    A bone density scan in May 2002 revealed early osteopenia.  Dr. Janda advised Plaintiff

4 to supplement with calcium and perform weight bearing exercises.  AR 289.

5    On May 7, 2002, Dr. Higa performed surgery on Plaintiff to repair an internal hernia.  AR

6 180.

7    Plaintiff saw Dr. Higa on May 20, 2002.  She complained of chest pain and some nausea.

8 Dr. Higa indicated that Plaintiff was recovering well from hernia surgery and that her gastric

9 bypass looked pretty much intact.  In a letter to Dr. Janda, Dr. Higa explained that he could offer

10 Plaintiff very little because her objective tests were normal.  Dr. Higa suspected that her

11 condition was "more reflux-mediated."  AR 217.

12    In June 2002, Plaintiff began seeing treating physician Freddie Hayes, M.D., for

13 evaluation and follow-up.  AR 333-337.  No heart problems were noted.  AR 333-337.

14    On July 31, 2002, Dr. Hayes referred Plaintiff to Madhav Suri, M.D., for evaluation of

15 headaches.  Plaintiff complained of daily headaches and intermittent numbness in both forearms

16 that is relieved by shaking her hands.  Dr. Suri diagnosed migraine headaches, hand paresthesias

17 with positive Tinel's sign bilaterally and related decreased grip strength in both hands, and

18 symptoms suggestive of underlying anxiety depression.  Dr. Suri recommended medication for

19 her headaches and suggested a conservative approach for her hand symptoms, including avoiding

20 repetitive strain injury to the wrists and use of bilateral wrist splints.  AR 329-331.

21    On October 3, 2002, Plaintiff saw Dr. Sandu and complained of intermittent chest pain

22 that was relieved with nitroglycerin.  She also complained of occasional palpitations.  AR 366.

23 Upon examination, she had a regular cardiac rate and rhythm.  Her lungs were clear and her

24 abdomen was nontender.  Dr. Sandu diagnosed coronary artery disease, "Syndrome X," diabetes

25 and hypertension.  AR 366.

26    Plaintiff saw Dr. Hayes in October 2002.  Her lungs were clear, her heart had a normal

27 sinus rhythm, her abdomen was normal, and her neurological exam was normal.  AR 348.

28

5

1    Plaintiff began receiving mental health treatment from Margot E. Tepperman, L.C.S.W.,

2   in January 2003.  AR 347-363.

3    In February 2003, Dr. Hayes completed a questionnaire in which he indicated that

4   Plaintiff's impairments included non-insulin dependent diabetes, bronchial asthma and duodenal

5   ulcer disease.  AR 343.  He believed that Plaintiff's medical problems precluded work at any

6   exertional level.  When asked to describe Plaintiff's abilities to sit, stand or walk, he wrote,

7   "N/A."  He thought she could lift 10 pounds frequently and 20 pounds occasionally.  She had

8   decreased pushing/pulling capabilities and could only perform manipulative functions for one

9   hour at a time.  AR 344.  He based his opinion on Plaintiff's clinical anemia, weakness and

10   asthma.  AR 343.

11    Plaintiff saw Dr. Sandu on August 20, 2003, and complained of sharp chest pain, sharp

12   pain in her arms, occasional heaviness in her chest, shortness of breath and dizziness.  Upon

13   examination, she had a regular cardiac rate and rhythm.  Her lungs were clear and her abdomen

14   was nontender.  Dr. Sandu diagnosed hypertension, diabetes and "syndrome X."  AR 364.

15   Plaintiff was advised to continue her present medical management and to closely monitor her

16   blood pressure.  AR 364.

17    In September 2003, Ms. Tepperman completed a medical report in which she indicated

18   that Plaintiff suffered from anxiety, depression, insomnia and lack of focus.  She seemed to

19   respond to treatment but was inconsistent.  AR 362.  In a medical assessment, Ms. Tepperman

20   opined that Plaintiff's ability to perform many work functions was poor.  She indicated that

21   Plaintiff could not focus on anything but simple tasks, one at a time.  AR 360-361.

22    ALJ's Findings

23    The ALJ first explained that Plaintiff worked full-time for five months in 2003 and was

24   laid off for non-medical reasons.  AR 16.  The ALJ found this to be substantial gainful activity.

25   AR 16.

26    The ALJ found that Plaintiff had the severe impairments of diabetes mellitus, morbid

27   obesity and recurring incisional hernias.  AR 17.  She determined that Plaintiff's testimony was

28   minimally credible.  AR 18.  Plaintiff had the residual functional capacity ("RFC") to perform a

1  medium level of work, but had to avoid repetitive strain on her wrists.  She had no mental

2  limitations.  AR 18-19.  Based on this RFC, the ALJ determined that Plaintiff could perform past

3  relevant work.  AR 20.

4  **SCOPE OF REVIEW**

5  Congress has provided a limited scope of judicial review of the Commissioner's decision

6  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

7  the Court must determine whether the decision of the Commissioner is supported by substantial

8  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

9  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

10  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

11  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

12  401.  The record as a whole must be considered, weighing both the evidence that supports and

13  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

14  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

15  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

16  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

17  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

18  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

19  Cir. 1987).

20  **REVIEW**

21  In order to qualify for benefits, a claimant must establish that he is unable to engage in

22  substantial gainful activity due to a medically determinable physical or mental impairment which

23  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

24  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

25  such severity that he is not only unable to do her previous work, but cannot, considering his age,

26  education, and work experience, engage in any other kind of substantial gainful work which

27  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

28

1   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

2   Cir. 1990).

3        In an effort to achieve uniformity of decisions, the Commissioner has promulgated

4   regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

5   C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2]  Applying this process in this case, the ALJ

6   found that Plaintiff: (1) has engaged in substantial gainful activity since the alleged onset of

7   disability;(2) has an impairment or a combination of impairments that is considered "severe"

8   (diabetes mellitus, morbid obesity, and recurring incisional hernias) based on the requirements in

9   the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of

10  impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,

11  Regulations No. 4; and (4) can perform her past relevant work.  AR 20-21.

12       Plaintiff contends that the ALJ (1) failed to use a vocational expert; (2) made an

13  unsupported step two finding; (3) failed to properly review her testimony; (4) failed to develop

14  the mental health record; and (5) failed to consider Plaintiff's obesity.

15                              **DISCUSSION**

16  A.    Use of Vocational Expert

17  _____ Plaintiff contends that the ALJ's finding that there were "substantial hand restrictions"

18  required the testimony of a vocational expert ("VE") in determining whether Plaintiff could

19  perform her past relevant work.

20       VE testimony is required for certain step five decisions.  At step five, if a claimant shows

21  that he or she cannot return to a previous job, the burden shifts to the Secretary to show that

22  claimant can do other kids of work.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  In

23  making this showing, the ALJ must use a VE where there is no other reliable evidence of the

24  claimant's ability to perform specific jobs.  *Id.*

25       However, as in this case, where the claimant fails to show that she cannot return to her

26  past relevant work, the burden remains with the claimant and does not shift to the Secretary.

27

28  _____

    [2]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1  *Matthews v. Shalala*, 10 F.3d 678 (9th Cir.).  In such a case, VE testimony would be "useful, but

2  not required."  *Id.*

3        Here, the ALJ determined that Plaintiff could perform her past relevant work requiring

4  light exertion.  AR 20.  He explained that by Plaintiff's description, the work "has not required

5  lifting more than 10 pounds, and most of it, such as customer service, telephone communications

6  and apparently file clerk, does not present any reasonable risk or repetitive strain to the wrists."

7  AR 20.  Accordingly, contrary to Plaintiff's contention, the burden remained with the Plaintiff

8  and VE testimony was not necessary.

9  B.    Step Two Decision

10        Next, Plaintiff contends that the ALJ ignored multiple impairments at step two of the

11  sequential evaluation process.  In support of her argument, Plaintiff lists numerous alleged

12  "impairments" and argues that the ALJ should have found more severe impairments.

13        At the second step of the sequential evaluation of disability, the ALJ determines whether

14  a claimant has a severe impairment or combination of impairments.  A severe impairment is one

15  that significantly limits the claimant's physical or mental ability to do basic work activities.  20

16  C.F.R. § 1520(c). A "severe" impairment at step two is merely an impairment or combination of

17  impairments that has more than a minimal effect on the claimant's abilities to perform basic

18  work activities.  *See* 85-28.  The step two analysis is a threshold one which enables the ALJ to

19  deny benefits based on medical considerations alone to those applicants with impairments of

20  such minimal nature that they could never prevent a person from working.  *Id.*; *Smolen v. Chater*,

21  80 F.3d 1273, 1290 (9th Cir. 1996) (describing the severity requirement as a "de minimis

22  screening device to dispose of groundless claims").

23        At step two, the ALJ determined that Plaintiff had the severe impairments of diabetes

24  mellitus, morbid obesity and incisional hernia.  AR 17.  This allowed the ALJ to proceed with the

25  disability analysis and consider *all* functional limitations established by reliable evidence, not

26  just the limitations resulting from the impairments found to be severe.  20 C.F.R. § 404.1545.

27  Therefore, it is irrelevant whether the ALJ identified the additional impairments as severe, as she

28  proceeded with the disability analysis and considered functional limitations, regardless of

1   whether they resulted from an impairment established as severe.  AR 17-19.  In any event, there

2   is no evidence that Plaintiff's alleged impairments impose significant limitations.  The mere

3   diagnosis of an impairment is not sufficient to sustain a finding of disability.  *Key v. Heckler*, 754

4   F.2d 1545, 1549 (9th Cir. 1985).

5   C.   Plaintiff's Testimony

6        Plaintiff next argues that the ALJ failed to fully and fairly review her testimony.

7   Specifically, Plaintiff contends that the ALJ failed to review the criteria in SSR 96-7p, failed to

8   ask Plaintiff why she did not return to Dr. Suri, and did not consider her good earnings record.

9        The ALJ is required to make specific findings assessing the credibility of plaintiff's

10  subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  In rejecting

11  the complainant's testimony, "the ALJ must identify what testimony is not credible and what

12  evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

13  1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.

14  1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

15  severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

16  with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

17  discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

18       "The ALJ may consider at least the following factors when weighing the claimant's

19  credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

20  testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

21  record, and testimony from physicians and third parties concerning the nature, severity, and effect

22  of the symptoms of which [claimant] complains."  *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d

23  789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in

24  the record, we may not engage in second-guessing."  *Id.*

25       First, Plaintiff incorrectly argues that SSR 96-7p sets forth a mandatory procedure

26  through which an ALJ must assess the claimant's credibility.  While courts give the SSRs some

27  deference, they do not have the force of law.  *Holohan v. Massanari,* 246 F.3d 1195, 1203, n. 1

28  (9th Cir. 2001).

1    Second, despite Plaintiff's arguments, the ALJ made findings sufficient to allow the

2    Court to determine that she did not arbitrarily reject Plaintiff's testimony.  The ALJ first

3    explained that Plaintiff's complaints were inconsistent with the medical evidence.  AR 18.

4    Indeed, as the ALJ set forth, most, if not all of Plaintiff's medical problems, were "wholly within

5    the realm of medical management and, in fact, successfully managed."  AR 17.

6    The ALJ next explained that Plaintiff's five months of work as a file clerk in 2003, during

7    the time she alleges she was disabled, is inconsistent with substantial limitations resulting from

8    carpal tunnel syndrome.  *Thomas,* 278 F.3d at 958.  Plaintiff testified that during this time, she

9    worked 40 hours per week and stopped because she was laid off.  She further testified that she

10   would have kept working if she had not been laid off.  AR 377.  Certainly, such activity

11   discredits Plaintiff's claim of disability.  Plaintiff argues that this was an "admirable attempt to

12   work," and that if a VE testified, the VE would have confirmed that this did not constitute full

13   time, competitive work under SSR 96-8p.  Opening Brief, at 5.  As Respondent points out,

14   Plaintiff misstates the issue, which was not whether her work was full-time and competitive, but

15   rather whether her complaints were credible given her ability to work in that capacity.  Plaintiff

16   appears to confuse a step one finding with a credibility analysis.[3]

17   Finally, the ALJ discredited Plaintiff's credibility based on her failure to return to Dr.

18   Suri, despite his instruction to return in three months, or immediately if her pain worsened.  AR

19   18.  This was a valid consideration.  The ALJ may use "ordinary techniques" in addressing

20   credibility, *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make

21   inferences "logically flowing from the evidence."  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir.

22   1996).

23   The ALJ therefore set forth specific reasons to allow the Court to determine that she did

24   not arbitrarily discredit Plaintiff's testimony.

25

26

27

28
         [3] At step one, the ALJ found that Plaintiff's 2003 work constituted substantial gainful activity and
determined that she last engaged in such activity on September 29, 2003.  AR 16-17.

1   D.   <u>Mental Health Record</u>

2   _____Plaintiff argues that the ALJ should have developed the mental health record because the

3   opinions of Ms. Tepperman, a licensed clinical social worker, supported a finding that Plaintiff

4   had a mental impairment.  Plaintiff further contends that Ms. Tepperman's diagnosis was

5   confirmed by a treating physician.

6   _____It is Plaintiff's burden to produce full and complete medical records, not the

7   Commissioner's.  *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).  However, when the

8   evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the

9   evidence, the ALJ has a duty to develop the record.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150

10  (9th Cir.2001).  The ALJ may discharge this duty in one of several ways, including subpoenaing

11  claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or

12  keeping the record open after the hearing to allow supplementation of the record.  *Id.*

13  _____Although Plaintiff appears to argue that the ALJ should have developed the mental health

14  record, there is no indication that the record was inadequate or ambiguous so as to prevent

15  meaningful analysis.  The ALJ was presented with Plaintiff's testimony and Ms. Tepperman's

16  records, but determined that Plaintiff did not establish a mental impairment and was therefore not

17  limited in her mental capacity.  AR 19-20.  Indeed, Plaintiff does not identify any evidence that

18  may have resulted from further development.

19  _____Rather, Plaintiff's argument seems more directed to the ALJ's rejection of Ms.

20  Tepperman's opinion.  Plaintiff understands that the opinion was not rendered by an acceptable

21  medical source, but contends that her opinion should have been accepted insofar as it supported

22  Plaintiff's mental impairment.  Ms. Tepperman is a licensed clinical social worker and, as

23  Plaintiff concedes, is not an "acceptable medical source."  20 C.F.R. §§ 404.1513(a), 416.913(a).

24  Instead, she is considered to be an "other source" whose opinion the ALJ may give less weight

25  than that of an acceptable medical source.  20 C.F.R. §§ 404.1513(d), 416.913(d); *Gomez v.*

26  *Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  Although there are exceptions to this rule, such as

27  when a treating physician adopts the opinion or when the unacceptable source works closely with

28

a physician, they are not applicable in this case.  *Polny v. Bowen*, 864 F.2d 661, 662-664 (9th Cir. 1988); *Gomez,* 74 F.3d at 970-971.

Here, the ALJ explained that she considered Ms. Tepperman's opinion, but found it unsupported by an acceptable medical source.  AR 19.  Such a finding was within the ALJ's discretion.

E.      Plaintiff's Obesity

Finally, Plaintiff contends that the ALJ failed to review her obesity pursuant to SSR 02-1p.  In a related argument, she contends that the ALJ failed to review the opinions of Dr. Suri and Dr. Hayes.

Pursuant to SSR 02-1p, obesity must be considered throughout the sequential evaluation process, including when determining an individual's RFC.  "The combined effects of obesity with other impairments may be greater than might be expected without obesity."  SSR 02-1p. The Ninth Circuit recently held that, pursuant to SSR 02-1p, the ALJ must consider obesity in determining RFC based on the information in the case record.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Contrary to Plaintiff's argument, the ALJ considered Plaintiff's obesity and specifically found that her obesity was a severe impairment.  AR 17.  Although the record contained documentation of Plaintiff's obesity, including her gastric bypass surgery in 1998, Plaintiff does not point to any resulting limitations.  Nor does the record indicate that Plaintiff was limited because of her obesity, or that her obesity contributes to her symptoms.  The mere diagnosis of an impairment is not sufficient to sustain a finding of disability.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Plaintiff's testimony that only her carpal tunnel syndrome was bothersome during her work in 1993, and that she quit only because she was laid off, supports this finding. Moreover, Dr. Hayes, Plaintiff's treating physician, did not indicate that Plaintiff's obesity was an impairment.  AR 343-344.

Insofar as Plaintiff argues that the ALJ improperly rejected the opinions of Dr. Suri and Dr. Hayes, her argument fails.  It is true that the medical opinion of a claimant's treating physician is entitled to "special weight," *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988),

1    and may be rejected only for specific, legitimate, reasons. *Lester v. Chater*, 81 F.3d 821, 830

2    (9th Cir. 1995).  Similarly, the opinion of an examining doctor, even if contradicted by another

3    doctor, can only be rejected for specific and legitimate reasons that are supported by substantial

4    evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

5         The ALJ reviewed Dr. Suri's examination and his conclusions, including his

6    recommendation of conservative treatment for Plaintiff's carpal tunnel syndrome and his

7    instruction to return in three months, or sooner if her problem worsened.  AR 331.  Plaintiff

8    contends that the ALJ improperly rejected Dr. Suri's opinion on the basis that she only saw him

9    once.  Plaintiff points to other evidence apparently received from Dr. Suri, but the documents are

10   unsigned and do not reveal the name of the doctor.  In any event, the ALJ did not necessarily

11   reject Dr. Suri's opinion and in fact accepted Dr. Suri's recommendation to avoid repetitive

12   strain injury to the wrists by incorporating it into Plaintiff's RFC.  AR 19.  The ALJ only

13   mentioned the fact that Plaintiff saw Dr. Suri once in suggesting that perhaps Plaintiff's hand and

14   wrist problems were not as severe as she alleged.  AR 17.

15        As to Dr. Hayes, Plaintiff argues that ALJ did not properly consider his opinion that she

16   could not perform full time work or use her hands long.  In the decision, the ALJ set forth Dr.

17   Hayes' questionnaire, including his statement that Plaintiff could not work or use her hands for

18   more than one hour at a time.  AR 19, 343-344.  The ALJ rejected this opinion, explaining that it

19   was summary in nature, not supported by the treatment record or objective evidence, and

20   contradicted by the record as a whole.  AR 19.  These are proper factors to consider in weighing

21   the opinion of a treating source.  *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

22   Certainly, given the lack of evidence of significant impairments (including Dr. Hayes' failure to

23   identify a diagnoses to support his hand impairments) and Plaintiff's work in 2003, the ALJ's

24   rejection was reasonable.

25                                    **RECOMMENDATION**

26        Based on the foregoing, the Court finds that the ALJ's decision is supported by

27   substantial evidence in the record as a whole and is based on proper legal standards.

28   Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

1    of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

2    Defendant Jo Anne B. Barnhart and against Plaintiff Delores Walls.

3          These findings and recommendations will be submitted to the Honorable Anthony W.

4    Ishii, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after

5    being served with these findings and recommendations, the parties may file written objections

6    with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

7    and Recommendations."  The parties are advised that failure to file objections within the

8    specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

9    F.2d 1153 (9th Cir. 1991).

10

11          IT IS SO ORDERED.

12     **Dated:    November 21, 2005**              _____ **/s/ Dennis L. Beck** _____
       3b142a                                    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28